IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

SHERMAN VOY NICHOLAS, JR.,

      Plaintiff,

v.                                    Case No.: 3:20-cv-00531

KILOLO KIJAKAZI,
Acting Commissioner of the
Social Security Administration,

      Defendant.

**PROPOSED FINDINGS AND RECOMMENDATIONS**

This action seeks a review of the decision of the Commissioner of the Social Security Administration (hereinafter "Commissioner") denying Plaintiff's applications for a period of disability and disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f. The matter is assigned to the Honorable Robert C. Chambers, United States District Judge, and was referred to the undersigned United States Magistrate Judge by standing order for submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending are Plaintiff's Motion for Judgment on the Pleadings and the Commissioner's Brief in Support of Defendant's Decision, requesting judgment in her favor. (ECF Nos. 15, 16, 17).

For the following reasons, the undersigned **RECOMMENDS** that the Court **GRANT** Plaintiff's motion for judgment on the pleadings to the extent that it requests remand of the Commissioner's decision pursuant to sentence four of 42 U.S.C. § 405(g);

**DENY** Defendant's request to affirm the decision of the Commissioner; **REVERSE** the final decision of the Commissioner; **REMAND** this matter pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this PF&R; and **DISMISS** this case, **with prejudice**, and remove it from the docket of the Court.

## I.    Procedural History

In January 2015, Sherman Voy Nicholas, Jr., ("Claimant") protectively filed for DIB and SSI, alleging a disability onset date of February 12, 2014, due to "diabetes, nerve damage in left hand, neuropathy, depression, anxiety, and back problems." (Tr. at 242, 412-21, 435). After his applications were denied at the initial and reconsideration levels of review, Claimant requested an administrative hearing, which was held before the Honorable Boyce Crocker, Administrative Law Judge ("ALJ Crocker"), on May 4, 2017. (Tr. at 141-80). By written decision dated May 22, 2017, ALJ Crocker found that Claimant was not disabled as defined by the Social Security Act ("the ALJ's prior decision"). (Tr. at 239-61). Upon granting Claimant's request for review, the Appeals Council vacated the ALJ's prior decision. (Tr. at 262-66). It remanded the case to the ALJ to issue a new decision in the case. (*Id.*). The Honorable Melinda Wells, Administrative Law Judge ("the ALJ"), held an administrative hearing on July 10, 2019. (Tr. at 115-40). By written decision dated August 20, 2019, the ALJ found that Claimant was not disabled as defined by the Social Security Act. (Tr. at 61-86). The ALJ's decision became the final decision of the Commissioner on July 16, 2020, when the Appeals Council denied Claimant's request for review. (Tr. 1-7).

Claimant timely filed the present civil action seeking judicial review pursuant to 42 U.S.C. § 405(g). (ECF No. 2). The Commissioner subsequently filed an Answer opposing Claimant's Complaint and a Transcript of the Administrative Proceedings. (ECF Nos. 11,

2

12). Claimant filed a Motion for Judgment on the Pleadings and supporting memorandum, and the Commissioner filed a Brief in Support of Defendant's Decision. (ECF Nos. 15, 16, 17). The time period within which Claimant could file a reply to the Commissioner's response expired. Consequently, the matter is fully briefed and ready for resolution.

## II.    **Claimant's Background**

Claimant was 43 years old on his alleged onset date and 49 years old on the date of the ALJ's decision. (Tr. at 78). He communicates in English, obtained an associate degree in Web Design–Computer Programming, and previously worked as a programmer analyst. (Tr. at 120, 136, 434).

## III.    **Summary of ALJ's Decision**

Under 42 U.S.C. § 423(d)(5), a claimant seeking disability benefits has the burden of proving a disability. *See Blalock v. Richardson,* 483 F.2d 773, 775 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Social Security regulations establish a five-step sequential evaluation process for the adjudication of disability claims. If an individual is found "not disabled" at any step of the process, further inquiry is unnecessary, and benefits are denied. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The first step in the sequence is determining whether a claimant is currently engaged in substantial gainful employment. *Id.* §§ 404.1520(b), 416.920(b). If the claimant is not, then the second step requires a determination of whether the claimant suffers from a severe impairment. *Id.* §§ 404.1520(c), 416.920(c). A severe impairment is one that "significantly limits [a claimant's] physical or mental ability

3

to do basic work activities." *Id.* If severe impairment is present, the third inquiry is whether this impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4 (the "Listing"). *Id.* §§ 404.1520(d), 416.920(d). If so, then the claimant is found disabled and awarded benefits.

However, if the impairment does not meet or equal a listed impairment, the adjudicator must assess the claimant's residual functional capacity ("RFC"), which is the measure of the claimant's ability to engage in substantial gainful activity despite the limitations of his or her impairments. *Id.* §§ 404.1520(e), 416.920(e). After making this determination, the fourth step is to ascertain whether the claimant's impairments prevent the performance of past relevant work. *Id.* §§ 404.1520(f), 416.920(f). If the impairments do prevent the performance of past relevant work, then the claimant has established a *prima facie* case of disability, and the burden shifts to the Commissioner to demonstrate, in the fifth and final step of the process, that the claimant is able to perform other forms of substantial gainful activity, given the claimant's remaining physical and mental capacities, age, education, and prior work experiences. 20 C.F.R. §§ 404.1520(g), 416.920(g); *see also McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983). The Commissioner must establish two things: (1) that the claimant, considering his or her age, education, skills, work experience, and physical shortcomings has the capacity to perform an alternative job, and (2) that this specific job exists in significant numbers in the national economy. *McLamore v. Weinberger*, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the SSA "must follow a special technique at each level in the administrative review process," including the review performed by the ALJ. 20 C.F.R. §§ 404.1520a(a), 416.920a(a). Under this technique, the ALJ first evaluates the claimant's pertinent signs, symptoms, and laboratory results to

determine whether the claimant has a medically determinable mental impairment. *Id.* §§ 404.1520a(b), 416.920a(b). If an impairment exists, the ALJ documents his findings. Second, the ALJ rates and documents the degree of functional limitation resulting from the impairment according to criteria specified in 20 C.F.R. §§ 404.1520a(c), 416.920a(c). Third, after rating the degree of functional limitation from the claimant's impairment(s), the ALJ determines the severity of the limitation. *Id.* §§ 404.1520a(d), 416.920a(d). A rating of "none" or "mild" in the four functional areas of understanding, remembering, or applying information; (2) interacting with others; (3) maintaining concentration, persistence, or pace; and (4) adapting or managing oneself will result in a finding that the impairment is not severe unless the evidence indicates that there is more than minimal limitation in the claimant's ability to do basic work activities. *Id.* §§ 404.1520a(d)(1), 416.920a(d)(1). Fourth, if the claimant's impairment is deemed severe, the ALJ compares the medical findings about the severe impairment and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment meets or is equal to a listed mental disorder. *Id.* §§ 404.1520a(d)(2), 416.920a(d)(2). Finally, if the ALJ finds that the claimant has a severe mental impairment, which neither meets nor equals a listed mental disorder, the ALJ assesses the claimant's residual mental functional capacity. *Id.* §§ 404.1520a(d)(3), 416.920a(d)(3). The regulations further specify how the findings and conclusion reached in applying the technique must be documented by the ALJ, stating:

> The decision must show the significant history, including examination and laboratory findings, the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

20 C.F.R. §§ 404.1520a(e)(4), 416.920a(e)(4).

5

Here, the ALJ determined as a preliminary matter that Claimant met the insured status for disability insurance benefits through June 30, 2018. (Tr. at 66, Finding No. 1). At the first step of the sequential evaluation, the ALJ confirmed that Claimant had not engaged in substantial gainful activity since February 12, 2014, the alleged disability onset date. (*Id.*, Finding No. 2). At the second step of the evaluation, the ALJ found that Claimant had the following severe impairments: degenerative disc disease, cubital decompression of the left elbow, left shoulder adhesive capsulitis, diabetes mellitus, obesity, major depressive disorder, bipolar disorder, social anxiety disorder, and cannabis use disorder. (*Id.*, Finding No. 3). The ALJ also considered Claimant's hypertension, hyperlipidemia, and gastroesophageal reflux disease, but the ALJ found that the impairments were non-severe. (Tr. at 67). The ALJ further found that Claimant's headaches did not constitute a medically determinable impairment. (*Id.*).

Under the third inquiry, the ALJ concluded that Claimant did not have an impairment or combination of impairments that met or medically equaled any of the impairments contained in the Listing. (Tr. at 67-70, Finding No. 4). Accordingly, the ALJ determined that Claimant possessed:

> [T]he residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can occasionally push and pull with the left upper extremity. He can frequently climb ramps and stairs, balance, and stoop. He can occasionally kneel, crouch, and crawl. He can never climb ladders, ropes, or scaffolds. He can frequently handle and finger with the left hand. He can occasionally feel with the left fourth and fifth digits. He can never reach with the left upper extremity. He must avoid more than occasional exposure to temperature extremes and vibration. He can never work at unprotected heights or around moving machinery. He can perform simple routine tasks in a routine work setting that involve [sic] occasional interaction with the general public.

(Tr. at 70-77, Finding No. 5).

At the fourth step, the ALJ determined that Claimant could not perform his past

relevant work. (Tr. at 77-78, Finding No. 6). Therefore, the ALJ reviewed Claimant's prior work experience, age, and education in combination with his RFC to determine his ability to engage in other substantial gainful activity. (Tr. at 78-79, Findings 7 through 10). The ALJ considered that (1) Claimant was born in 1970 and was defined as a younger individual age 18-49 on his alleged disability onset date; (2) Claimant had at least a high school education and could communicate in English; and (3) transferability of job skills was not an issue because the Medical-Vocational Rules supported a finding that Claimant was "not disabled" regardless of whether he had transferable job skills. (Tr. at 78, Findings 7 through 9). Taking into account these factors, Claimant's RFC, and the testimony of a vocational expert ("VE"), the ALJ determined that Claimant could perform other jobs that existed in significant numbers in the national economy, including the positions of marker, garment sorter, or checker. (Tr. at 78-79, Finding No. 10). Consequently, the ALJ concluded that Claimant was not disabled as defined by the Social Security Act and was not entitled to benefits. (Tr. at 79, Finding No. 11).

## IV.    **Claimant's Challenges to the Commissioner's Decision**

Claimant argues that the ALJ did not fully account for his left upper extremity impairments in the RFC finding, which resulted in an improper hypothetical to the VE, and the ALJ failed to comply with the Appeals Council's Remand Order to resolve any conflicts between the VE's testimony and the DOT. (ECF No. 16 at 4-13). In response to Claimant's challenges, the Commissioner contends that Claimant has not proven that he is disabled under the Social Security Act, and the ALJ reasonably relied on the VE's testimony and complied with the Appeals Council's Order. (ECF No. 17 at 5-11).

## V.    **Relevant Evidence**

The undersigned has reviewed all of the evidence before the Court. The following

evidence is most relevant to the issues in dispute.

### A. Treatment Records

On August 9, 2013, Claimant complained of left shoulder pain and arm numbness for the past week. (Tr. at 704). An MRI was taken of his cervical spine, which showed mild multilevel degenerative changes. (Tr. at 709). Nerve conduction and electromyographic studies performed a few months later, on November 6, 2013, indicated moderate to severe left ulnar neuropathy. (Tr. at 569). Claimant underwent left cubital tunnel release surgery on December 3, 2013. (Tr. at 567). Claimant's follow up nerve conduction and electromyographic studies on October 1, 2014, indicated mild ulnar neuropathy in Claimant's left elbow that was consistent with cubital tunnel syndrome. (Tr. at 667). Therefore, orthopedic surgeon, Steven Novotny, M.D., performed extended complex ulnar nerve decompression to relieve Claimant's recurrent cubital tunnel syndrome with sensory deficit in his left upper extremity. (Tr. at 654-55). Claimant stated to orthopedic surgeon, James Reagan, M.D., on December 11, 2014, that he felt some changes in the ulnar sensory distribution distally after surgery, and he could now play guitar for 15 to 20 minutes at a time. (Tr. at 580). Claimant's sensation to light touch was improving in his left ulnar distribution, and his sensory abilities were otherwise intact. (*Id*.).

Claimant underwent additional EMG and nerve conduction studies on November 29, 2016. The studies showed improvement compared to Claimant's 2014 results because Claimant's left ulnar sensory nerve had normalized. (Tr. at 980). There was no evidence of cervical radiculopathy. (*Id*.). Claimant's primary care physician, Benjamin Wendt, M.D., recorded on December 14, 2016, and March 7, 2017, that Claimant did not have any sensory loss. (Tr. at 1191, 1205). On April 7, 2017, Claimant presented for an initial consultation with neurologist, Vikram Shivkumar, M.D., due to unsteady gait. (Tr. at

1085). During that examination, Claimant's motor strength, sensation to light touch, and finger-nose-finger test were all normal. (Tr. at 1087). Dr. Shivkumar recorded the same normal examination findings during a follow-up appointment on June 16, 2017. (Tr. at 1071). However, Dr. Wendt noted on August 18, 2017, that Claimant complained of back pain and suffered mild sensory loss. (Tr. at 1184).

On November 7, 2017, Claimant complained of left shoulder pain, and his x-ray indicated a probable small bone island of the proximal humerus. (Tr. at 1171-72). Dr. Wendt assessed on January 3, 2018, that Claimant's left shoulder pain was caused by a combination of bony abnormality and muscle spasm. (Tr. at 1163). He prescribed medication and physical therapy. (*Id*.). Claimant continued to report left shoulder pain, and he underwent a left shoulder MRI scan on May 1, 2018, which showed a small partial thickness tendon tear and possible adhesive capsulitis. (Tr. at 1142). Sports medicine physician, David Rupp, M.D., diagnosed Claimant with adhesive capsulitis and rotator cuff tendinopathy on September 11, 2018. (Tr. at 1124). Dr. Rupp noted that Claimant had been doing well in terms of shoulder pain, but the pain was exacerbated by Claimant falling on his left shoulder. (Tr. at 1120, 1124). Claimant alleged that his shoulder pain occasionally radiated into his left arm. (Tr. at 1120).

Claimant's repeat left shoulder MRI on January 25, 2019, did not reflect any change in Claimant's torn rotator cuff, but Claimant's adhesive capsulitis was slightly improved. (Tr. at 1403). Claimant presented to orthopedic surgeon, Ardalan Sayan, M.D., on May 8, 2019. He related that he suffered from left shoulder pain for the past year after he slipped in his basement and landed on his arm. (Tr. at 1416). Dr. Sayan noted that Claimant was a good candidate for left shoulder arthroscopy, but he could not undergo surgery until his diabetes was under control. (Tr. at 1417). (*Id*.). Therefore, Dr. Sayan

advised Claimant to consult his primary care physician regarding lowering his A1C. (*Id.*). Dr. Sayan stated that he could possibly give Claimant another long-acting cortisone injection in the meantime. (*Id.*).

### B. Evaluations and Opinions

On April 28, 2015, Stephen Nutter, M.D., performed an Internal Medicine Examination (IME) of Claimant. Claimant complained of pain and numbness in parts of the fourth and fifth digits on his left hand, as well as pain in the lateral aspect of his left hand, wrist, and arm up to his elbow. (Tr. at 759). On examination, Claimant's range of motion was diminished in his left wrist, he expressed pain and tenderness in his left elbow, and he had loss of sensation to pinprick and light touch in his left fourth and fifth digits. (Tr. at 762, 763). He did not have tenderness, redness, warmth, swelling, or atrophy in his hands; his left grip strength was reduced on the first attempt, but judged to be more realistically 5/5 on the second attempt; he could write and pick up coins bilaterally without difficulty; there was no evidence of ulnar deviation; and he had normal range of motion in his fingers. (*Id.*).

Thereafter, on May 27, 2015, state agency physician, Helen Remolona, M.D., assessed Claimant's RFC based upon her review of Claimant's records. Dr. Remolona opined that Claimant could perform work at the light exertional level with additional postural, manipulative, and environmental limitations. (Tr. at 188-90, 201-03). Regarding manipulative limitations, Dr. Remolona assessed that Claimant could frequently handle and occasionally finger with his left hand and occasionally feel with his left fourth and fifth digits. (Tr. at 189, 202). Uma Reddy, M.D., affirmed Dr. Remolona's RFC assessment on September 18, 2015. (Tr. at 216-18, 230-32).

### C. Claimant's Statements

Claimant testified during his administrative hearing on July 10, 2019, that he suffered from constant left arm pain that was aggravated by any kind of movement, and he was going to proceed with left shoulder surgery once he lowered his blood glucose (Tr. at 122, 124). Claimant further stated that three of his fingers on his left hand were numb. (Tr. at 128). He conceded that he did not have any issue with bathing or dressing himself, and he could perform some cleaning, cooking, and caring for his dog. (Tr. at 130). Claimant testified that he could not play guitar anymore "with [his] left hand being the way it is." (Tr. at 131). He noted that he could pick up coins using two fingers and could only type using his index fingers. (Tr. at 133, 134).

### D. ALJ's Prior Decision

On May 22, 2017, ALJ Crocker issued an unfavorable decision on Claimant's applications for benefits. (Tr. at 239-61). In that decision, ALJ Crocker assessed that Claimant could frequently handle with his left hand, finger occasionally with his left hand, and feel occasionally with the fourth and fifth digits of his left hand. (Tr. at 247).

### E. Appeals Council's Remand Order

The Appeals Council remanded ALJ Crocker's decision on several grounds. As relevant to Claimant's challenges in this action, the Appeals Council noted that the VE listed six jobs that someone with Claimant's RFC could perform. (Tr. at 264). The VE stated that her testimony was consistent with the information in the Dictionary of Occupational Titles (DOT). (*Id.*). However, the Appeals Council cited that Claimant's RFC was restricted to occasional fingering with the left hand, and two of the jobs that the VE identified required frequent fingering, including the positions of routing clerk and table worker. (*Id.*). The Appeals Council concluded that ALJ Crocker did not comply with the

11

command of Social Security Ruling (SSR) 00-4p, which required him to resolve any conflict between the VE's testimony and the DOT before relying on the VE's testimony to conclude that Claimant was not disabled. (*Id*.). Therefore, the Appeals Council vacated ALJ Crocker's decision and remanded the case for the ALJ to, *inter alia*, give further consideration to Claimant's RFC and provide appropriate rationale with specific citations to the record to support the assessed limitations. (*Id*.). The Appeals Council instructed that, if it was warranted by the expanded record, the ALJ should obtain evidence from a VE to clarify the effect of the RFC limitations on Claimant's occupational base, including resolving any conflicts between the occupational evidence provided by the VE and the information in the DOT and its companion publication, the Selected Characteristics of Occupations. (*Id*.).

### F.  *VE's Testimony*

During Claimant's July 10, 2019 administrative hearing, the ALJ posed a hypothetical to the VE which listed Claimant's characteristics and included various limitations, such as frequent handling and fingering with the left hand, occasional feeling with the left fourth and fifth digits, and never reaching overhead with the left arm. (Tr. at 136-37). The VE responded that the hypothetical person could work as a price marker, DOT 209.587-034; garment sorter, DOT 222.687-014; and checker I, DOT 222.687-010. (Tr. at 137-38). The ALJ added to the hypothetical that the person would be absent from work two or more days per month, and the VE responded that the additional limitation would preclude all work. (Tr. at 138). Claimant's counsel then asked the VE whether there were any jobs that could be performed by someone with the characteristics and limitations that the ALJ included in the first hypothetical except that the person could occasionally handle with the left hand, never type, and never comply with production

rates. (Tr. at 139). The VE responded that there would be no jobs available to the person because any possible jobs would require more than occasional public interaction, which exceeded the RFC. (*Id.*). The VE additionally testified, in response to Claimant's counsel's question, that a person is precluded from any employment if off task more than ten percent of the workday. (Tr. at 139-40).

## VI.    <u>Standard of Review</u>

The issue before the Court is whether the final decision of the Commissioner is based upon an appropriate application of the law and is supported by substantial evidence. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). The United States Court of Appeals for the Fourth Circuit ("Fourth Circuit") defined "substantial evidence" to be:

> [E]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

*Blalock*, 483 F.2d at 776 (4th Cir. 1973) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). When examining the Commissioner's decision, the Court does not conduct a *de novo* review of the evidence to ascertain whether the claimant is disabled. *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (citing *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). Instead, the Court's role is limited to ensuring that the ALJ followed applicable Regulations and Rulings in reaching his decision, and that the decision is supported by substantial evidence. *Hays*, 907 F.2d at 1456. If substantial evidence exists, the Court must affirm the Commissioner's decision "even should the court disagree with such decision." *Blalock*, 483 F.2d at 775.

13

## VII.  <u>Discussion</u>

Claimant challenges the ALJ's RFC assessment, VE hypothetical, and compliance with the Appeals Council's Remand Order. Each argument is considered below, in turn.

### A.  *RFC*

Claimant argues that the ALJ's RFC finding in this matter "gave improper and arbitrary weight to the substantial evidence presented by Claimant and is, therefore, an improper basis upon which to base the Administration's burden." (ECF No. 16 at 8). SSR 96-8p provides guidance on how to properly assess a claimant's RFC, which is the claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." SSR 96-8p, 1996 WL 374184, at *1. RFC is a measurement of the ***most*** that a claimant can do despite his or her limitations resulting from both severe and non-severe impairments, and the finding is used at steps four and five of the sequential evaluation to determine whether a claimant can still do past relevant work and, if not, whether there is other work that the claimant is capable of performing. *Id*. According to the Ruling, the ALJ's RFC determination requires "a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." *Id*. at *3.

The functions which the ALJ must assess include a claimant's physical abilities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching); mental abilities, such as understanding, remembering, and carrying out instructions and responding appropriately to supervision, coworkers, and work pressures in a work setting; and other abilities, such as seeing and hearing. 20 CFR §§ 404.1545(b)-(d), 416.945(b)-(d)

14

Only by examining specific functional abilities can the ALJ determine (1) whether a claimant can perform past relevant work as it was actually, or is generally, performed; (2) what exertional level is appropriate for the claimant; and (3) whether the claimant "is capable of doing the full range of work contemplated by the exertional level." SSR 96-8p, 1996 WL 374184, at *3. Indeed, "[w]ithout a careful consideration of an individual's functional capacities to support an RFC assessment based on an exertional category, the adjudicator may either overlook limitations or restrictions that would narrow the ranges and types of work an individual may be able to do, or find that the individual has limitations or restrictions that he or she does not actually have." *Id.* at *4. In determining a claimant's RFC, the ALJ "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g. laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id.* at *7. Further, the ALJ must "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." *Id.* at *7.

While an ALJ is not required to explicitly discuss "irrelevant or uncontested" functions, "[r]emand may be appropriate where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (quoting *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013)) (markings omitted).

In this case, Claimant challenges the ALJ's RFC assessment concerning his left upper extremity impairments. (ECF No. 16 at 8, 10, 11). In that regard, the ALJ considered Claimant's allegations that he could no longer type normally or play guitar, and he had weakness in his left hand and numbness in three fingers on his left hand. (Tr. at 75-76).

The ALJ cited the medical evidence concerning Claimant's left shoulder and elbow impairments, including his left cubital release surgeries. (Tr. at 71-73). She noted that Claimant's left grip strength was reduced during his April 2015 consultative examination, but Claimant could pick up coins without difficulty, had normal range of motion in his fingers, and did not complain of tenderness or demonstrate atrophy during that examination. (Tr. at 72).

The ALJ gave great weight to the state agency physicians' RFC opinions regarding Claimant's physical impairments. (Tr. at 77). However, she concluded that subsequent evidence established additional left upper extremity limitations. (*Id*.). The ALJ noted that Claimant had ongoing difficulties with his left arm, including neuropathy and adhesive capsulitis, but he did not have neurological deficits other than decreased sensation in his fingers, his reflexes were normal, he did not have muscle atrophy, and he could tend to his personal needs independently and help clean, prepare simple meals, and take care of his dog. (Tr. at 76). The ALJ ultimately concluded that Claimant had the RFC to frequently handle and finger with his left hand, occasionally feel with his left fourth and fifth digits, and never reach with the left upper extremity. (Tr. at 70).

While some of the ALJ's RFC assessment is well supported, her analysis contains several critical errors that impacted her ultimate decision that Claimant was disabled. First, the ALJ's explanation of the weight that she gave to the state agency opinions is illogical. The state agency physicians, Dr. Remolona and Dr. Reddy, assessed that Claimant could frequently handle and occasionally finger with his left hand and occasionally feel with his left fourth and fifth digits. (Tr. at 189, 202, 218, 232). The ALJ stated that she gave those opinions great weight except that she assessed additional left upper extremity limitations. (Tr. at 77). Indeed, the ALJ added a limitation that Claimant

16

could never reach with his left arm. (Tr. at 70). However, the ALJ found that Claimant could frequently finger with his left hand, which was a less restrictive finding than the experts' assessments that Claimant could only finger with his left hand occasionally. (Tr. at 77, 189, 202, 218, 232). Although the ALJ was not obligated to adopt the experts' opinions, the ALJ stated that she gave their opinions great weight because she found the limitations that they assessed were consistent with and supported by the record. (Tr. at 77). Therefore, the ALJ's analysis of the opinion evidence does not reconcile with the ALJ's contrary finding that Claimant could frequently finger with his left hand.

As noted, an ALJ must address conflicting evidence and build a logical bridge to the RFC finding. The ALJ failed to perform that function in this case. She did not mention the state agency physicians' opinions that Claimant could occasionally finger, much less explain her reasons for giving those opinions little weight. In fact, the ALJ purported to give great weight to the opinions, but she assessed a less restrictive manipulative limitation without any explanation.

The ALJ's failure to explain her RFC finding that Claimant could frequently finger with his left hand is especially concerning given the fact that the matter was remanded, in part, due to ALJ Crocker's errors concerning that functional ability. It is curious that, on remand, the ALJ glossed over her assessment that Claimant could frequently finger with the left hand when it was critical to the step five finding, as evidenced by the Appeals Council's Remand Order. In explaining the RFC finding, the ALJ should have addressed the pertinent conflicting evidence that the state agency physicians found that Claimant could finger occasionally with his left hand, rather than purporting to give the opinions great weight and instead assessing a less restrictive manipulative limitation without elaboration.

For those reasons, the undersigned **FINDS** that the ALJ's RFC analysis is not supported by substantial evidence. Accordingly, the undersigned **RECOMMENDS** that the Commissioner's decision be **REVERSED** and that this case be **REMANDED** so that the ALJ may reexamine or elaborate upon her analysis of Claimant's ability to finger with his left hand.

### B. VE Hypothetical

Claimant next argues that the ALJ's hypothetical to the VE did not include all of his limitations, and the VE's testimony was thus legally insufficient to support the step five finding. (ECF No. 16 at 10). In order for a VE's opinion to be relevant, it must be in response to a proper hypothetical question that sets forth all of the claimant's impairments. *English v. Shalala*, 10 F.3d 1080, 1085 (4th Cir. 1993); *Walker v. Bowen*, 889 F.2d 47, 50-51 (4th Cir. 1989). To frame a proper hypothetical question, the ALJ must first translate the claimant's physical and mental impairments into an RFC that is supported by the evidence; one which adequately reflects the limitations imposed by the claimant's impairments. *Lacroix v. Barnhart*, 465 F.3d 881, 889 (8th Cir. 2006). "[I]t is the claimant's functional capacity, not his clinical impairments, that the ALJ must relate to the vocational expert." *Fisher v. Barnhart,* 181 F. App'x 359, 364 (4th Cir. 2006). A hypothetical question will be "unimpeachable if it adequately reflects a residual functional capacity for which the ALJ had sufficient evidence." *Id.* (citing *Johnson v. Barnhart,* 434 F.3d 650, 659 (4th Cir. 2005)) (internal quotation marks omitted); *see also Russell v. Barnhart*, 58 F. App'x 25, 30 (4th Cir. 2003) (noting that hypothetical question "need only reflect those impairments supported by the record"). However, "[t]he Commissioner can show that the claimant is not disabled only if the vocational expert's testimony that jobs exist in the national economy is in response to questions from the ALJ that accurately

reflect the claimant's work-related abilities." *Morgan v. Barnhart*, 142 F. App'x 716, 720-21 (4th Cir. 2005).

SSR 00-4p requires an ALJ to "inquire, on the record" whether a VE's testimony conflicts with the DOT. SSR 00-4p, 2000 WL 1898704, at *2. "When there is an apparent unresolved conflict between VE … evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict." *Id.* Ultimately, SSR 00-4p requires an ALJ to "resolve" any such conflict "before relying on the VE … evidence to support a determination or decision about whether the claimant is disabled." *Id.*

As discussed, the ALJ's RFC assessment was unsupported by substantial evidence because the ALJ failed to address conflicting evidence and explain her reasoning for the left upper extremity fingering limitation that she assessed. Therefore, the ALJ's hypothetical to the VE was likewise flawed because it was not based on an RFC that was supported by substantial evidence. In addition to the ALJ's errors regarding Claimant's fingering limitation, the hypothetical that the ALJ posed to the VE did not fully account for Claimant's reaching limitation. The ALJ found that Claimant had the RFC to never reach with his left upper extremity, but the hypothetical that the ALJ posed to the VE only included the limitation of no overhead reaching with the left upper extremity. (Tr. at 70, 137). Therefore, the VE's testimony was not provided in response to a hypothetical that accurately reflected Claimant's work-related abilities.

Moreover, the ALJ repeated ALJ Crocker's error by failing to resolve an apparent conflict between the VE's testimony and the DOT. The VE identified the jobs of price marker, DOT 209.587-034; garment sorter, DOT 222.687-014; and checker I, DOT 222.687-010 in response to the ALJ's hypothetical, which included no overhead reaching with the upper left extremity. (Tr. at 137). The VE stated that her testimony was consistent

with the DOT. (Tr. at 138). However, the DOT provides that all three jobs that the VE identified require frequent reaching. DOT 209.587-034, 1991 WL 671802; DOT 222.687-014, 1991 WL 672131; DOT 222.687-010, 1991 WL 672130. The ALJ did not resolve that conflict before relying on the VE evidence at step five of the sequential evaluation.

As the Fourth Circuit emphasized in *Pearson*, SSR 00-4p requires the ALJ to identify and resolve apparent conflicts between the VE's testimony and the DOT, and that duty is not fulfilled simply because the VE responds that the testimony is consistent with the DOT. *Pearson v. Colvin*, 810 F.3d 204, 208-10 (4th Cir. 2015). "The apparent conflict standard [...] embraces the reality that, in many cases, testimony may only *appear* to conflict with the *Dictionary,* and the vocational expert may be able to explain that, in fact, no conflict exists." *Id*. at 209. However, "if the ALJ does not elicit this explanation, then the expert's testimony cannot provide substantial evidence to support the ALJ's decision." *Id.*

In *Pearson*, the ALJ found that the claimant could occasionally reach upward with his non-dominant upper extremity, yet the VE testified in response to a hypothetical including that limitation that the person could perform three jobs that the DOT defined as requiring frequent reaching. *Id*. at 210. The Fourth Circuit noted that the DOT's broad definition of reaching encompasses extending hands and arms in any direction. *Id.* Therefore, although the DOT did not expressly state that the occupations identified by the expert required frequent bilateral overhead reaching, the DOT's broad definition of "reaching" meant that the jobs certainly *may* require such reaching. *Id*. at 211. The Court explained that the VE's testimony apparently conflicted with the DOT, and the ALJ was required to elicit an explanation from the VE regarding what form of reaching the occupations required and whether there were significant numbers of those jobs in the

20

national economy that the claimant could perform. *Id.*

A very similar conflict existed in the present matter. The ALJ posed a question which included no overhead reaching with the non-dominant extremity. That hypothetical did not fully account for the ALJ's assessed RFC limitation that Claimant could not reach in any direction with his left arm. Notwithstanding that issue, even the limitation of no overhead reaching with the left arm conflicted with the DOT provisions that the jobs require frequent reaching. The DOT does not specify the form of reaching that is required in those positions, and it is not possible to discern whether the performance of the jobs is precluded by Claimant's RFC without additional testimony from a VE. Therefore, the ALJ must resolve the apparent conflict regarding what type of reaching is involved in the jobs that the VE identified and whether those activities are precluded by Claimant's RFC before relying on the VE evidence to determine that Claimant can perform those jobs. Accordingly, the undersigned **FINDS** that the ALJ did not properly rely on the VE's testimony at step five of the sequential evaluation. On remand, the ALJ should explain the basis for the RFC limitations that she assessed, pose a new hypothetical to the VE which includes all of Claimant's assessed limitations, and resolve any conflicts between the VE's testimony and the DOT.

### C. Remand Order

Finally, Claimant asserts that the ALJ failed to comply with the Appeals Council's Remand Order. (ECF No. 16 at 10). He notes that the ALJ was instructed to resolve any conflict between the VE's testimony and the DOT, and explain how she resolved the conflict, before relying on the evidence from the VE at step five of the sequential evaluation. (*Id.* at 8-9). Claimant asserts that the ALJ simply repeated ALJ Crocker's mistake. (*Id.* at 9).

On remand from the Appeals Council, an ALJ "shall take any action that is ordered by the Appeals Council and may take any additional action that is not inconsistent with the Appeals Council's remand order." 20 C.F.R. §§ 404.977(b), 416.1477(b). Federal courts are split on the issue of whether an ALJ's failure to comply with an Appeals Council remand order may serve as an independent ground for reversal, and the Fourth Circuit has not definitively addressed the issue. *Erickson v. Colvin*, No. 5:14CV74, 2015 WL 3892293, at *3–4 (N.D.W. Va. June 24, 2015); *Ginger N. v. Comm'r, Soc. Sec. Admin.*, No. CV SAG-18-1830, 2019 WL 1903548, at *2 (D. Md. Apr. 29, 2019) (collecting cases). This district has applied the rule that an ALJ's failure to comply with an Appeals Council's directive constitutes legal error, but "reversal and remand are required only where the claimant demonstrates that the ALJ's decision might reasonably have been different or would not be supported by substantial evidence had the ALJ complied with the remand order." *Adkins v. Saul*, No. 3:19-CV-00624, 2020 WL 4514667, at *11 (S.D.W. Va. July 14, 2020), *report and recommendation adopted,* 2020 WL 4508311 (S.D.W. Va. Aug. 5, 2020) (citing *Huddleston v. Astrue*, 826 F. Supp. 2d 942, 955 (S.D.W. Va. 2011)).

That standard is met in this case. As discussed above, the ALJ failed to comply with the Appeals Council's directive to resolve any conflicts between the VE's testimony and the DOT before relying on the VE's testimony to conclude that Claimant was not disabled. (Tr. at 264). Had the ALJ complied with the Appeals Council's Remand Order, the result may reasonably have been different because the ALJ may have determined based on further evidence from the VE that there were not jobs that existed in significant numbers in the national economy that Claimant could perform. Thus, the undersigned **FINDS** that the ALJ did not comply with the Appeals Council's Remand Order. As previously expressed, the ALJ should obtain VE testimony on remand to clarify the effect of

Claimant's RFC limitations on Claimant's occupational base, and the ALJ should resolve any conflicts between the occupational evidence provided by the VE and the information in the DOT and its companion publication, the Selected Characteristics of Occupations.

## VIII.  **Recommendations for Disposition**

Based on the foregoing, the undersigned United States Magistrate Judge respectfully **PROPOSES** that the presiding District Judge confirm and accept the findings herein and **RECOMMENDS** that the District Judge **GRANT** Plaintiff's request for judgment on the pleadings, (ECF No. 15), to the extent that it requests remand of the Commissioner's decision; **DENY** Defendant's request to affirm the decision of the Commissioner, (ECF No. 17); **REVERSE** the final decision of the Commissioner; **REMAND** this matter pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this PF&R; and **DISMISS** this action from the docket of the Court.

The parties are notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable Robert C. Chambers, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and three days (if received by mail) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made, and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown. Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Judge and a waiver of appellate

review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing party, Judge Chambers, and Magistrate Judge Eifert.

The Clerk is directed to file this "Proposed Findings and Recommendations" and to provide a copy of the same to counsel of record.

**FILED:** August 12, 2021

Cheryl A. Eifert
United States Magistrate Judge